IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

STEPHANIE B.,[1]                                              No. 6:24-cv-02136-YY

              Plaintiff,                                OPINION AND ORDER

       v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

YOU, Magistrate Judge.

       Plaintiff Stephanie B. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and

Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C.

§§ 1381-1383f.  This court has jurisdiction to review the Commissioner's final decision pursuant

to 42 U.S.C. §§ 405(g).  For the reasons set forth below, the Commissioner's decision is

AFFIRMED.

**PROCEDURAL HISTORY**

       Plaintiff filed an application for disability insurance benefits on October 8, 2021, and for

supplemental security income on November 16, 2021, alleging a disability onset date of May 30,

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

1 – OPINION AND ORDER

2020. Tr. 61, 62. The Commissioner denied plaintiff's claims on September 12, 2022, and again

upon reconsideration on February 13, 2023. Tr. 97–105, 117–23. Plaintiff filed a written request

for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on December

12, 2023. Tr. 124–25, 34–54. The ALJ issued a decision finding plaintiff not disabled within the

meaning of the Act. Tr. 17–27. The Appeals Council denied plaintiff's request for review on

October 30, 2024. Tr. 1–3. Thus, the ALJ's decision is the Commissioner's final decision and

subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a

mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal

quotation marks omitted). This court must weigh the evidence that supports and detracts from the

ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting

evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v.
Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for the

Commissioner's when the evidence can reasonably support either affirming or reversing the

decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is

susceptible to more than one rational interpretation, the Commissioner's decision must be upheld

if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533

F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 30, 2020. Tr. 19. At step two, the ALJ found plaintiff had the following severe, medically determinable impairments: anxiety disorder, depressive disorder, and borderline personality disorder. *Id.* At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. The ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can persist at simple, routine, repetitive tasks, make simple work-related decisions, in a workplace with few changes, and no assembly line pace work. She can only occasionally interact with the public.

Tr. 21.

At step four, the ALJ determined plaintiff was unable to perform past relevant work as a quality control inspector. Tr. 25. At step five, the ALJ found—considering plaintiff's age, education, work experience, and RFC—jobs exist in significant numbers in the national economy plaintiff can perform, including janitor, auto detailer, and hand packager. Tr. 26–27. Thus, the

3 – OPINION AND ORDER

ALJ concluded plaintiff was not disabled at any time since May 30, 2020, the alleged onset date. Tr. 27.

## DISCUSSION

Plaintiff claims the ALJ erred in (1) discounting her subjective symptom testimony without providing clear and convincing reasons, (2) finding unpersuasive Rachel Iverson, PCA's, medical opinion, and (3) rejecting her mother's lay witness testimony. Pl. Br. 2, ECF 11.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's

4 – OPINION AND ORDER

character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff alleges she is unable to work due to bipolar disorder, social anxiety, obsessive-compulsive disorder, anxiety, and depression. Tr. 55, 63. In a pain questionnaire completed on February 15, 2022, plaintiff additionally described experiencing sudden pains in her knees and ankles, aching or dull pains in the lower back and hips ranging from mild to severe, and headaches that make it difficult for her to focus on completing tasks. Tr. 281–82. Ginger root tea and exercise helped her with her body aches. Tr. 282. In a function report dated February 14, 2022, plaintiff reported her symptoms affected her ability to lift, walk, stand, talk, see, hear, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. Tr. 278. In a later function report dated December 30, 2022, plaintiff reported her symptoms affected her ability to lift, squat, bend, stand, reach, walk, kneel, talk, hear, climb stairs, see, remember, complete tasks, and concentrate. Tr. 322.

At her hearing on December 12, 2023, plaintiff testified she stopped working her previous job at Kohl's because her forty-five minute walk to work wore her out and caused her "to be sick physically." Tr. 42. She described feelings of mental instability, anxiety, and losing track of time. Tr. 40. Plaintiff testified she used to take the bus alone but at the time of the hearing would only take the bus if she was with her mother and brother. Tr. 41. She testified she lived alone, walked to get groceries, prepared simple meals for herself, and on a typical day

5 – OPINION AND ORDER

would get up and have coffee, check her email, sometimes do housework, eat, and sleep. Tr. 41, 43.

Plaintiff testified she sometimes feels unable to care for herself due to a lack of energy. Tr. 48. She claims she is unable to work full time because she does not "have the energy to do that anymore." Tr. 48. For example, two or three days a week, she cannot make herself do anything, waits until the end of the day to eat, and spends time on the couch in her living room. Tr. 48–49.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. The ALJ provided three distinct rationales for discounting plaintiff's symptom testimony: her symptom testimony was inconsistent with the objective medical evidence, her symptom complaints conflicted with her daily activities, and she experienced improvement in her symptoms with treatment. Tr. 22–23.

### A.    Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7–8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by

objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Here, the ALJ first acknowledged plaintiff's diagnoses of anxiety disorder, depressive disorder, and borderline personality disorder. Tr. 22 (citing Tr. 574–75, 615). The ALJ then summarized plaintiff's complaints regarding a wide range of symptoms including:

> depressed mood, cycling moods, sadness, anhedonia, dysregulation, nervousness, anxiousness, social anxiety, panic, increased worry, dissociation, diminished interest or pleasure in activities, sleep disturbance, appetite disturbance, hopelessness, increased stress, feelings of overwhelm, avoidance, chronic emptiness, difficulty concentrating, poor self-esteem, fatigue, irritability,  anger outbursts, fear, racing thoughts, and intrusive thoughts, as well as a history of self-mutilation, and passive suicidal ideation.

Tr. 23 (internal citations omitted). However, the ALJ noted many of plaintiff's objective mental status examinations during the relevant period did not reflect such severe complaints and "only demonstrated variability in her mood, affect, insight, judgment, and thought process." The ALJ further noted the same mental examinations "demonstrated a normal, clean, and well-dressed appearance, with alertness, orientation, a pleasant and cooperative demeanor, clear speech, normal behavior, good hygiene, average intellectual functioning, appropriate fund of knowledge, with intact memory, intact attention, intact concentration, and intact thought content." *Id.* (citing Tr. 381, 395, 398, 426, 469, 471, 473, 475, 477, 479, 481, 483, 485, 487, 489, 491, 493, 495, 497, 499, 501, 503, 505, 507, 555, 565, 568–69, 572, 575, 578, 581, 597, 599, 601, 603, 605, 607, 609, 614–15).

Plaintiff argues she does not need to prove the severity of her symptoms with objective medical evidence and contends the ALJ improperly rejected her testimony "as

7 – OPINION AND ORDER

to the severity of symptoms merely because they are unsupported by objective medical evidence." Pl. Br. 10, ECF 11 (quoting *Reddick*, 157 F.3d at 722); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.").

But, again, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis in original). It was permissible and reasonable for the ALJ to consider plaintiff's normal behavior, intact memory, intact attention, intact concentration, intact thought content, and average intellectual functioning to undermine her allegations of completely disabling symptoms. Tr. 23. And, even if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). Accordingly, the ALJ's rationale for discrediting plaintiff's symptom allegations on the basis that it is inconsistent with the medical evidence meets the clear-and-convincing threshold.

## B.    Activities of Daily Living and Conservative Treatment

Because the ALJ provided at least one valid reason for rejecting plaintiff's subjective symptom testimony, it is unnecessary to discuss the additional reasons the ALJ provided. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's opinion discounting the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not

8 – OPINION AND ORDER

credible"); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (recognizing any "error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ did not properly evaluate the medical opinion of Rachel Iverson, PCA. Pl. Br. 2–7, ECF 11.

### A.    Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by

9 – OPINION AND ORDER

explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

10 – OPINION AND ORDER

**B.      Rachel Iverson, PCA**

Rachel Iverson, PCA, first met with plaintiff on May 4, 2023, for an intake appointment to begin counseling. Tr. 509. Iverson initially diagnosed plaintiff with post-traumatic stress disorder and found she had moderate depression and mild anxiety. *Id.* Plaintiff met with Iverson for weekly counseling from May 9, 2023, to at least September 26, 2023. On October 26, 2023, Iverson completed a medical questionnaire opining on plaintiff's status and functional limitations. Tr. 582–87. Iverson assessed plaintiff as "best characterized by diagnoses including Borderline Personality Disorder and chronic Post-Traumatic Stress disorder, which present in [her] most predominantly with symptoms including anxiety, depression, impulsivity, and feeling overwhelmed. She experiences great difficulty leaving her home and interacting with others." Tr. 583. Iverson described plaintiff as suffering from "unmanageable anxiety and panic" causing her to have difficulty focusing and communicating with others. *Id.* Iverson noted plaintiff was often overwhelmed and had difficulty following instructions "of any kind, let alone complex or detailed ones." *Id.*

Responding to the question of whether plaintiff would be able to work a simple, routine, low stress job with no requirement of contact with the public or close coordination with supervisors or co-workers, Iverson stated "[plaintiff] does not feel she is capable at this time to provide such consistency, as her emotional and physical state vary greatly on a daily and sometimes hourly basis, making her unable to offer any level of consistency." Tr. 583. Iverson opined plaintiff suffered from several extreme limitations in understating and carrying out complex instructions, interacting with the public, and interacting with co-workers. Tr. 585. Iverson noted plaintiff's limitations have existed since early 2020 and concluded plaintiff would be absent from work more than four days per month due to her medical impairments. Tr. 586–87.

11 – OPINION AND ORDER

Regarding supportability, the ALJ noted Iverson "admitted that she has only been treating the claimant since May 2023" and opined that plaintiff's "limitations were viable only 'at this time,'" but "without explanation indicated that [plaintiff's] limitations have existed since 2020." Tr. 25. The ALJ also found Iverson's opinion unsupported because she opined plaintiff's limitations were based in part on plaintiff's "physical state," but Iverson was a professional counselor associate and plaintiff's physical state was outside the scope of her expertise. Tr. 25. The ALJ further noted "there is nothing in the record to support any specific functional limitations caused by [plaintiff's] physical state." Tr. 25.

Regarding consistency, the ALJ found Iverson's opinion inconsistent with that of the consultative examiner who noted plaintiff had "an anxious mood with some tearfulness, poor eye contact, and limited insight and judgment, but otherwise alertness, orientation, a neat and clean appearance, soft speech, a congruent affect, intact memory, intact concentration, intact fund of knowledge, average intelligence, and the ability to make simple abstractions." Tr. 25; *see* Tr. 613. The ALJ further observed "there is little evidence of record to support the extreme limitations" of Iverson's opinion.[2] *Id.*

The ALJ reasonably found Iverson's opinion was not persuasive because it was unsupported and contradicted by other record evidence. The ALJ's decision is supported by substantial evidence. Accordingly, the ALJ did not err in assessing Iverson's opinion.

//

//

---

[2] The ALJ also found Iverson's opinion that plaintiff would struggle with commuting to work inconsistent with her admitted ability to use public transportation. Tr. 25. However, plaintiff testified that, while she used to take the bus when she was working, she does not take the bus unless she is with her mother or brother.

12 – OPINION AND ORDER

**III.    Lay Witness**

Plaintiff contends the ALJ erred by failing to provide specific, germane reasons for rejecting her mother's statement. Pl. Br. 14 ECF 11. However, the ALJ did explain she found plaintiff's mother's opinion "neither inherently valuable nor persuasive when compared to the objective medical evidence and the claimant's own reported activities of daily living (See 20 CFR 404.1504, 404.1520b(c) and 416.904)." Tr. 25. Furthermore, any error, if it exists, is harmless because "the lay witness alleged substantially the same limitations to those alleged by the plaintiff and the ALJ provided valid reasons to reject the plaintiff's testimony." *Dale Z. E. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-00663-AA, 2023 WL 2301577, at *6 (D. Or. Feb. 28, 2023) (citing *Molina*, 674 F.3d at 1122).

**CONCLUSION**

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED March 16, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

13 – OPINION AND ORDER